JS 44
(Rev. 03/99)

# CIVIL COVER SHEET

**The JS-44** civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )

**I.     (a) PLAINTIFF**
GWTP Investments, L.P.

**DEFENDANT**
SES Americom, Inc.

3 - 04CV - 1383L

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**      **Dallas**

(EXCEPT IN U S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____

(IN U S PLAINTIFF CASES ONLY)

NOTE     IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)      ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Mark A. Shank
Matthew G. Nielsen
Hughes & Luce, LLP
1717 Main St., Suite 2800
Dallas, TX 75201
Phone: 214-939-5500
FAX: 214-939-5849

ATTORNEYS (IF KNOWN)

RECEIVED

JUN 2 4 2004

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION**     *(PLACE AN "X" IN ONE BOX ONLY)*

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☐ 3   Federal Question (U.S. Government Not A Party) |
| ☐ 2   U.S. Government Defendant | ☒ 4   Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES**     *(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)*

*(FOR DIVERSITY CASES ONLY)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a ☐ 3 Foreign Country | | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT**   *(PLACE AN "X" IN ONE BOX ONLY)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110  Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610  Agriculture | ☐ 422  Appeal 28 USC 158 | ☐ 400  State Reapportionment |
| ☐ 120  Marine | ☐ 310  Airplane | ☐ 362  Personal Injury-Med Malpractice | ☐ 620  Other Food & Drug | ☐ 423  Withdrawal 28 USC 157 | ☐ 410  Antitrust |
| ☐ 130  Miller Act | ☐ 315  Airplane Product Liability | ☐ 365  Personal Injury Product Liability | ☐ 625  Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430  Banks and Banking |
| ☐ 140  Negotiable Instrument | ☐ 320  Assault, Libel & Slander | ☐ 368  Asbestos Personal Injury Product Liability | ☐ 630  Liquor Laws | ☐ 820  Copyrights | ☐ 450  Commerce/ICC Rates/etc |
| ☐ 150  Recovery of Overpayment & Enforcement of Judgment | ☐ 330  Federal Employers' Liability | | ☐ 640  R.R. & Truck | ☐ 830  Patent | ☐ 460  Deportation |
| ☐ 151  Medicare Act | ☐ 340  Marine | **PERSONAL PROPERTY** | ☐ 650  Airline Regs | ☐ 840  Trademark | ☐ 470  Racketeer Influenced and Corrupt Organizations |
| ☐ 152  Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345  Marine Product Liability | ☐ 370  Other Fraud | ☐ 660  Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810  Selective Service |
| ☐ 153  Recovery of Overpayment of Veteran's Benefits | ☐ 350  Motor Vehicle | ☐ 371  Truth in Lending | ☐ 690  Other | ☐ 861  HIA (1395ff) | ☐ 850  Securities/Commodities/Exchange |
| | ☐ 355  Motor Vehicle Product Liability | ☐ 380  Other Personal Property Damage | | ☐ 862  Black Lung (923) | ☐ 875  Customer Challenge 12 USC 3410 |
| ☐ 160  Stockholders' Suits | ☐ 360  Other Personal Injury | ☐ 385  Property Damage Product Liability | **LABOR** | ☐ 863  DIWC/DIWW (405(g)) | ☐ 891  Agricultural Acts |
| ☒ 190  Other Contract | | | ☐ 710  Fair Labor Standards Act | ☐ 864  SSID Title XVI | ☐ 892  Economic Stabilization Act |
| ☐ 195  Contract Product Liability | | | ☐ 720  Labor/Mgmt Relations | ☐ 865  RSI (405(g)) | ☐ 893  Environmental Matters |
| | | | ☐ 730  Labor/Mgmt Reporting & Disclosure Act | | ☐ 894  Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740  Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895  Freedom of Information Act |
| ☐ 210  Land Condemnation | ☐ 441  Voting | ☐ 510  Motion to Vacate Sentence | ☐ 790  Other Labor Litigation | ☐ 870  Taxes (U.S. Plaintiff or Defendant) | ☐ 900  Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220  Foreclosure | ☐ 442  Employment | **HABEAS CORPUS:** | ☐ 791  Empl. Ret. Inc  Security Act | ☐ 871  IRS-Third Party 26 USC 7609 | ☐ 950  Constitutionality of State Statutes |
| ☐ 230  Rent Lease & Ejectment | ☐ 443  Housing/Accommodations | ☐ 530  General | | | ☐ 890  Other Statutory Actions |
| ☐ 240  Torts to Land | ☐ 444  Welfare | ☐ 535  Death Penalty | | | |
| ☐ 245  Tort Product Liability | ☐ 440  Other Civil Rights | ☐ 540  Mandamus & Other | | | |
| ☐ 290  All Other Real Property | | ☐ 550  Civil Rights | | | |
| | | ☐ 555  Prison Condition | | | |

**V.   ORIGIN**     *(PLACE AN "X" IN ONE BOX ONLY)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1  Original Proceeding | ☐ 2  Removed from State Court | ☐ 3  Remanded from Appellate Court | ☐ 4  Reinstated or Reopened | ☐ 5  Transferred from another district (specify) | ☐ 6  Multidistrict Litigation | ☐ 7  Appeal to District Judge from Magistrate Judgment |

**VI.  CAUSE OF ACTION**  (CITE THE U.S. CIVIL STATUE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUES UNLESS DIVERSITY.)

**Breach of contract suit seeking specific performance.**

**VII. REQUESTED IN COMPLAINT:**   CHECK IF THIS IS A CLASS ACTION
☐ UNDER F R C P.23

DEMAND $ Specific performance

CHECK YES only if demanded in complaint
JURY DEMAND:  ☒ Yes   ☐ No

**VIII. RELATED CASE(S)**  (See instructions)
**IF ANY**
JUDGE _____        DOCKET NUMBER _____

DATE   6-24-04

SIGNATURE OF ATTORNEY OF RECORD   *Matt A. Nie*

FOR OFFICE USE ONLY

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | | |
|---|---|---|
| GWTP INVESTMENTS, L.P., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION |
| v. | § | NO. _____ |
| | § | |
| SES AMERICOM, INC. | § | |
| | § | |
| Defendant. | § | 3-04CV-1383L |

## ORIGINAL COMPLAINT

Plaintiff GWTP Investments, L.P. files this Original Complaint and in support thereof shows the following:

## PARTIES

1.    Plaintiff GWTP Investments, L.P. is a limited partnership formed under the laws of the State of Texas with its principal offices located at 1950 Stemmons Freeway, Suite 7014, Dallas, Texas 75207.

2.    Defendant SES Americom, Inc. is a corporation formed under the laws of the State of Delaware with its principal place of business located at 4 Research Way, Princeton, New Jersey 08540-6618 and may be served with citation by serving its registered agent for service of process in Texas, CT Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002.

**ORIGINAL COMPLAINT – Page 1**

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

      a.      Plaintiff GWTP Investments, L.P. is a citizen of the States of Texas and Pennsylvania.  Mission Holdings, Inc., a corporation formed under the laws of the State of Texas and who maintains its principal place of business in the State of Texas, and Floyd Ganassi, who is presently domiciled in the State of Pennsylvania, are both (1) the sole members of GWTP Holdings, L.L.C., the general partner of GWTP Investments, L.P. and (2) the limited partners of GWTP Investments, L.P.

      b.      Defendant SES Americom, Inc. is a citizen of the States of Delaware and New Jersey.

4.      Pursuant to 28 U.S.C. § 1391(c), Defendant is subject to personal jurisdiction in this judicial district at the time this action is commenced, and therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because Defendant "resides" in this judicial district.

## STANDING

5.      On or about June 21, 2004, Mission Holdings, Inc. assigned to GWTP Investments, L.P. all of its rights, duties, and obligations arising under and related to its contract for the purchase of certain assets from Defendant.  The term "Plaintiff" as used herein refers to GWTP Investments, L.P. in its position as the assignee of the rights,

**ORIGINAL COMPLAINT – Page 2**

duties, and obligations arising from the contract at issue in this case formed between Mission Holdings, Inc. and Defendant.

## FACTS

6.    In connection with a bankruptcy proceeding in the Southern District of New York, substantially all of the assets of Verestar, Inc., the bankruptcy debtor, were offered for sale at an auction scheduled to occur on or about March 30, 2004.

7.    The assets were divided into eight (8) "asset pools" on which bidders could submit bids. The asset pools are described in the document attached hereto as Exhibit "A," which is incorporated herein by reference as though fully set forth.

8.    Plaintiff desired to acquire the assets consisting of the asset pools denominated as Asset Pool Five, "Brewster Teleport," and Asset Pool Six, "Cedar Hill Teleport," which included the Texas Video Network (hereinafter "Brewster/Cedar Hill Teleports"). Generally, teleports are the ground-based side of satellite networks that receive signals from orbiting satellites and then transmit those signals to locations throughout the world. Plaintiff wanted to purchase the Brewster/Cedar Hill Teleports primarily to acquire the established business operations of those teleports that included, *iner alia*: (a) the established relationships that both of the operations making up those asset pools had with customers of teleport services; and (b) the talent and experience of the management and employees of both operations.

9.    With the encouragement of the auction company, Plaintiff began to contact other bidders about combining bid efforts.

**ORIGINAL COMPLAINT – Page 3**

10. On March 29, 2004, Plaintiff contacted Defendant through its representative Brent Brun, who is the Vice President of Product Management and Lead Generation for Defendant. Brun confirmed Defendant's earlier letter delivered to the other auction bidders that it was interested in acquiring all of the Verestar assets *other than* the Brewster/Cedar Hill Teleports that Plaintiff wished to acquire, thereby making a strategic relationship between Plaintiff and Defendant beneficial to both parties.

11. Accordingly, the parties entered into a Memorandum of Understanding, a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein by reference as though fully set forth (hereinafter the "MOU"). In the MOU, the parties agreed to "work cooperatively" to purchase "the Verestar assets." The parties further expressed their collective goal, specifically, that "Mission Holdings will offer to purchase Asset Pool 5, Brewster, and Asset Pool 6, Ceder Hill (including the Texas Video Network). SES Americom will offer to purchase the remaining Asset Pools."

12. During the course of the auction on March 30, 2004, Plaitniff and Defendant initially bid jointly per the parties intent as expressed by the MOU. However, in a stated move to successfully conclude the auction, Defendant's representatives stated to Plaintiff that Defendant was going to begin to bid on all of the Verestar assets at substantial increments. At that point, Plaintiff and Defendant entered into a contract wherein Plaintiff agreed to purchase the Brewster/Cedar Hill Teleports for a fixed sum of $1.5 million, which included up to $200,000.00 of "cure costs" (hereinafter the "Agreement"). Later that day, Defendant made an offer of $25 million for all of the

**ORIGINAL COMPLAINT – Page 4**

Verestar assets on the condition that such bid would conclude the auction. The Defendant's bid was accepted.

13.     During the hours while Defendant's ultimate winning bid was pending approval by the Board of Directors of Defendant, Brun again confirmed the Agreement that Defendant would sell the Brewster/Cedar Hill Teleports to Plaintiff for a fixed sum of $1.5 million. Later that same evening, after securing approval of the Defendant's Board of Directors, Brun again confirmed the Agreement and instructed Plaintiff's representatives at the auction to call Brun the next day so that the parties could begin to document the Agreement.

14.     In the following days, Defendant, through Brun and Pete Gutsafson, an employee of Defendant, consistently reaffirmed the Agreement to sell the Brewster/Cedar Hill Teleports to Plaintiff. In fact, Defendant provided wiring instructions to Plaintiff, through which Plaintiff wired its $100,000 escrow deposit to Defendant that had been earlier agreed upon on or about March 31, 2004.

15.     Despite repeated assurances by Defendant that it would honor its Agreement, on May 13, 2004, Dean Olmstead, the Chief Executive Officer and President of Defendant, stated in a telephone conference with Plaintiff's representatives, (a) that Defendant was "taking the position" that it had no legal obligation to sell Plaintiff the Brewster/Cedar Hill Teleports, but (b) that Defendant would sell the Cedar Hill Teleport to Plaintiff.

16.     Olmstead's "position" that the Agreement did not exist was consistent with a conversation between Plaintiff's representatives and Brun, Gustafson, and another

**ORIGINAL COMPLAINT – Page 5**

Defendant employee, Steve Mesarick, on April 30, 2004. In that conversation, Plaintiff was informed that Defendant was going to "take the position" that no "definitive" agreement existed between Plaintiff and Defendant for the sale of the Brewster/Cedar Hill Teleports so that Defendant could obtain necessary governmental approvals on the purchase of those teleports. In fact, by check dated May 3, 2004, Defendant returned Plaintiff's $100,000.00 deposit paid on March 31, 2004. Plaintiff's representatives were also informed in the April 30, 2004 telephone call that, while Defendant intended to sell the Cedar Hill Teleport to Plaintiff after the governmental approvals were obtained, Defendant no longer intended to sell the Brewster Teleport to Plaintiff.

17.     Defendant's repudiation of its obligation to sell the Brewster Teleport on April 30, 2004 had evolved from earlier discussions between representatives of Plaintiff and Defendant in which Defendant expressed hesitation about honoring the Agreement to sell Plaintiff the Brewster Teleport.

18.     Initially, on or about April 19, 2004, Gustafson informed Plaintiff that Defendant had changed its "thinking" on selling the two teleports and that Defendant was "backtracking" on the sale of the Brewster/Cedar Hill Teleports. Then, on April 23, 2004, Brun clarified that the manner in which the Verestar assets had been divided created logistical issues that Brun was confident would be resolved. Brun once again reaffirmed the Agreement for the sale of the Brewster/Cedar Hill Teleports. Defendant's position again changed on April 27, 2004, when Defendant inquired whether Plaintiff would accept certain "concessions" in turn for Defendant retaining the Brewster Teleport.

**ORIGINAL COMPLAINT – Page 6**

013664.00011.849035.06

As discussed above, Defendant finally began to claim it had no obligation to sell the Brewster Teleport.

19.    Since May 13, 2004, Defendant has continued to disclaim the Agreement between Defendant and Plaintiff for the purchase of the Brewster/Cedar Hill Teleports, most recently on June 14, 2004 through Defendant's counsel.

20.    Plaintiff has repeatedly reaffirmed its desire to complete the purchase of the Brewster/Cedar Hill Teleports and has repeatedly requested that Defendant honor its contract with Plaintiff.  To date, Defendant has rejected Plaintiff's request.

## FIRST CAUSE OF ACTION:
### Breach of Contract

21.    Plaintiff re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

22.    At all relevant times, Plaintiff and Defendant had a valid, binding contract, the Agreement.

23.    As detailed above, Defendant breached its obligations under the Agreement.

24.    All conditions precedent to Defendant's obligations under the Agreement have occurred.  Plaintiff has at all times been ready, willing, and has performed its obligations under the Agreement.

25.    The Brewster/Cedar Hill Teleports are have special and unique value and character and, therefore, Plaintiff has no adequate remedy at law for Defendant's breach of the Agreement.  Specifically, the Brewster/Cedar Hill Teleports are unique business

**ORIGINAL COMPLAINT – Page 7**

operations that include, among other things, unique well-established customer relationships and management and employee talent and experience, the loss of which cannot be adequately addressed by damages. Accordingly, Plaintiff seeks specific performance of its Agreement with Defendant.

26. In the alternative, as a direct result of Defendant's breach of the Agreement, Plaintiff has suffered actual damages for which it now seeks recovery, but which are not an adequate remedy.

## SECOND CAUSE OF ACTION:
### Promissory Estoppel

27. Plaintiff re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

28. In the alternative, Plaintiff is entitled to recovery of its damages under the theory of promissory estoppel.

29. Defendant made a promise to sell the Brewster/Cedar Hill Teleports to Plaintiff. Plaintiff reasonably and substantially relied on such promise to its detriment by, *inter alia*, expending considerable resources to organize and prepare to take over the operation of the Brewster/Cedar Hill Teleports. Plaintiff's reliance of Defendant's promise was reasonably foreseeable by Defendant because by the terms set forth by the bankruptcy court, Plaintiff's assumption of operational control of the Brewster/Cedar Hill Teleports was scheduled to occur simultaneously with the closing of the entire Verestar asset transaction, which was required to be done within 30 days after the sale of the Verestar assets was approved by the court.

**ORIGINAL COMPLAINT – Page 8**

013664.00011:849035.06

30.     Defendant breached its promise to sell the Brewster/Cedar Hill Teleports to Plaintiff and as a direct result of Defendant's breach of its promise, Plaintiff has suffered actual damages for which it now seeks recovery.

## ATTORNEYS' FEES

31.     Plaintiff re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

32.     Plaintiff has incurred attorney's fees and litigation expenses in seeking to enforce the Agreement.

33.     Plaintiff is entitled to recover from Defendant its reasonable and necessary attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.

34.     Plaintiff hereby presents its claim to Defendant as required by TEX. CIV. PRAC. & REM. CODE § 38.002 and, in the event payment is not tendered within 30 days, Plaintiff requests judgment for its attorneys' fees.

## DEMAND FOR JURY TRIAL

35.     In accordance with FED. R. CIV. P. 38(b), , Plaintiff hereby demands a trial by jury on all issues that are set forth in this Complaint.

**ORIGINAL COMPLAINT – Page 9**

013664.00011:849035.06

**WHEREFORE**, Plaintiff respectfully prays that it be awarded a judgment against Defendant and that it be awarded the following relief:

(a)     Specific performance of Defendant's agreement to sell the Brewster/Cedar Hill Teleports to Plaintiff for a fixed sum of $1.5 million, or in the alternative, an award of actual damages in an amount in excess of the jurisdictional minimum of this Court;

(b)     An award of all reasonable and necessary attorneys' fees;

(c)     An award of all court costs: and

(d)     An award of such other and further relief, special or general, legal or equitable, as Plaintiffs may show themselves to be justly entitled to receive.

Respectfully submitted,

**HUGHES & LUCE, LLP**

BY:   _Mark A. Nl_

Mark A. Shank
Texas State Bar No. 18090800
Matthew G. Nielsen
Texas State Bar No. 24032792

1717 Main Street, Suite 2800
Dallas, Texas  75201
214-939-5500 Phone
214-939-5849 FAX

**ATTORNEYS FOR PLAINTIFF**

**ORIGINAL COMPLAINT – Page 10**



## Auction Pools

The Company was required to designate not more than eight asset pools in connection with the proposed sale of substantially all of its assets. The list of those asset pools appears below. Parties may submit bids on one or more of these asset pools.

1. **Verestar, Inc. – Whole Company**
   All assets included in the stalking horse bid of SkyTerra Communications, Inc. ("SkyTerra"), <u>plus</u> a bidder may designate additional assets that it seeks to acquire from the list of "excluded assets" in the SkyTerra proposal.

2. **Core Business**
   Includes the Alexandria, Holmdel, Brewster and Leuk Teleports and leased facilities at 60 Hudson St., NY. This asset pool does not include the broadcast businesses, among other assets.

3. **Government Contracts**
   Includes Verestar's government contracts, no assets.


**Independent Teleports**

4. **Alexandria Teleport**
   Includes the Alexandria Teleport and all contracts supported by Alexandria.

5. **Brewster Teleport**
   Includes the Brewster Teleport and all contracts supported by Brewster.

6. **Cedar Hill Teleport**
   Includes the Cedar Hill Teleport, the Texas Video Network and all contracts supported by Cedar Hill.

7. **Holmdel Teleport**
   Includes the Holmdel Teleport and all contracts supported by Holmdel.

8. **Leuk Teleport**
   Includes the Leuk Teleport, Verestar AG contracts and all Verestar, Inc. contracts supported by Leuk.

   In addition to the eight asset pools listed above, the Company will consider separate bids for the Glenwood Teleport, which includes the teleport at Glenwood and all contracts supports by Glenwood. A separate bid for Glenwood will not be part of the SkyTerra auction process.


**Exhibit A**

Please direct any questions on the Verestar auction pools to Eric Thompson at Alvarez & Marsal. Eric can be reached at 571-226-5741, ethompson@alvarezandmarsal.com

:214 800 4588    # 3/ 8

5-17-04; 2:48PM;

.OM WILLKIE FARR 37FAX DEPT                    (TUE) 3. 30' 04 13:38/ST. 13:37/NO. 4261629084 P  2

Page 1

## MEMORANDUM OF UNDERSTANDING
### Between   SES Americom and Mission Holdings, Inc.

*March 29, 2004*

**General:**  SES Americom and Mission Holdings have submitted separate bids for selected assets of Verestar, Inc.  SES Americom and Mission Holdings wish to work cooperatively to increase their chances of completing a successful auction transaction on 3/30/2004 for the Verestar assets.

**Goal:**  Mission Holdings will offer to purchase Asset Pool 5, Brewster, and Asset Pool 6, Cedar Hill (including the Texas Video Network).  SES Americom will offer to purchase the remaining Asset Pools.

**Bid Strategies:**  SES Americom and Mission Holdings agree to discuss bidding strategy and tactics in order to present the most attractive offer to the Verestar auctioneers.  Areas of cooperation may include, but not be limited to, increasing the bid price and conforming to terms and conditions of the Verestar asset purchase agreement.

**Bid Price:**  Mission Holdings has indicated a willingness to bid at least $1,000,000 for the two Asset Pools noted above, along with an increase to the bid on an equal percentage basis consistent with the SES Americom bid

**Employees:**  Mission Holdings will agree to offer employment to the employees associated with the two Asset Pools noted above (17 employees at Brewster and 17 employees at Cedar Hill). up to an undisclosed amount

**Cure Liabilities**  Mission Holdings will agree to consider acceptance of the Cure Liabilities (amount to be determined) associated with the two Asset Pools noted above, for those contracts which Mission Holdings has Designated as "Designated Contracts" as defined in the Asset Purchase Agreement.

**Commercial Relationship:**  In the event that both companies realized their goals, Mission Holdings and SES Americom agree to negotiate the terms of a definitive agreement whereby Mission Holdings will allow SES Americom to have a right of last offer for satellite space segment business that Mission Holdings plans to purchase in the future, and  SES Americom will allow Mission Holdings a right of last offer for teleport services that SES Americom plans to purchase in the future from the geographic area of the Brewster and Cedar Hill teleports and that cannot otherwise be provided by an SES facility.

**Continuity of Service:**  Mission Holdings agrees to provide continuity of service at the Brewster and Cedar Hill teleports at current rates for customers that become the responsibility of SES Americom through this transaction.

**Obligation:**  Each of the parties acknowledges that no contractual agreement has been reached with respect to the subject matter hereof and under no circumstances would this MOU be legally binding on or enforceable against either party and does not impose an enforceable duty to conclude any agreement or commitment without a duly authorized, definitive written agreement. The Parties agree that this MOU is non-exclusive.

**Non-disclosure:**  Except as required by law, neither party (nor any of their respective affiliates or representatives) will make any press release or otherwise disclose to any person (other than their respective affiliates and

PRIVATE AND CONFIDENTIAL

**Exhibit B**

5-17-04; 2:48PM;                                                        :214 800 4588        # 4/ 8

.JM WILLKIE FARR 37FAX DEPT                     (TUE) 3. 30' 04 13:39/ST. 13:37/NO. 4261629084 P 3

Page 2

representatives) the existence or contents of this MOU or make known any facts related to the subject matter hereof without the prior written consent of the other party.

**Confidentiality:**    In connection with the consideration of the MOU, each party is prepared to furnish to the other certain confidential and proprietary information concerning its business and properties including third party customer information and requirements. All information shall be treated as proprietary and confidential and shall only be disclosed to personnel on a need to know basis and under no circumstances to third parties without the prior written consent of the other party. Moreover, information exchanged under this MOU may be subject to U.S. export control laws and regulations and each party agrees that such information shall not be disclosed or transferred without first obtaining approval from legal counsel from the disclosing party.

**Expenses:**    Each party will each bear its own expenses related to the investigation, negotiation, and consummation of the subject matter set forth herein.

**Effect:**    In the event that the parties are unable to reach agreement with respect to the subject matter herein by March 24, 2004, neither party will have any liability or obligation to the other with respect to the subject matter above except (i) other written agreements between the parties then in effect, (ii) as provided in Non-disclosure and Confidentiality sections above, which provisions will survive indefinitely, or (iii) the antecedent breach of this MOU. Under no circumstances would either party be liable to the other for indirect, consequential, punitive, special or other similar damages (whether in contract, tort (including negligence), strict liability or under any theory of liability), including but not limited to loss of actual or anticipated revenues or profits, loss of business, customers or good will.

**Amendments:**    The terms of this MOU may be modified or waived only by a separate writing signed by each of the parties that expressly modifies or waives any such term.

**Applicable Law:**    This MOU will be construed in accordance with and governed by the laws of the State of New Jersey (without regard to the choice of law provisions thereof).

**Counterparts:**    This MOU may be signed in any number of counterparts with the same effect as if each of the signatures were on the same agreement.

**Entire Agreement:**    This MOU constitutes the entire understanding between the parties and supersedes all previous agreements, promises, proposals, representations, understandings, and negotiations (whether written or oral) strictly with respect to the subject matter hereof.

Cure Liability Clarification: Mission Holdings cure liability related to Taxes & premises liens shall not exceed $200,000 for Brewster and Cedar Hill.

**Agreed by:**

Mission Holdings, Inc.                          SES Americom, Inc.

_____        _____        _____        _____
Philip J. Wise             Date           Brent C. Bruun             Date

PRIVATE AND CONFIDENTIAL

5-17-04; 2:48PM;                                                    ;214 800 4588        # 5/  8

Page 2

representatives) the existence or contents of this MOU or make known any facts related to the subject matter hereof without the prior written consent of the other party.

Confidentiality:       In connection with the consideration of the MOU, each party is prepared to furnish to the other certain confidential and proprietary information concerning its business and properties including third party customer information and requirements.    All information shall be treated as proprietary and confidential and shall only be disclosed to personnel on a need to know basis and under no circumstances to third parties without the prior written consent of the other party. Moreover, information exchanged under this MOU may be subject to U.S. export control laws and regulations and each party agrees that such information shall not be disclosed or transferred without first obtaining approval from legal counsel from the disclosing party.

Expenses:       Each party will each bear its own expenses related to the investigation, negotiation, and consummation of the subject matter set forth herein.

Effect:       In the event that the parties are unable to reach agreement with respect to the subject matter herein by March 30, 2004, neither party will have any liability or obligation to the other with respect to the subject matter above except (i) other written agreements between the parties then in effect, (ii) as provided in Non-disclosure and Confidentiality sections above, which provisions will survive indefinitely, or (iii) the antecedent breach of this · MOU. Under no circumstances would either party be liable to the other for indirect, consequential, punitive, special or other similar damages (whether in contract, tort (including negligence), strict liability or under any theory of liability), including but not limited to loss of actual or anticipated revenues or profits, loss of business, customers or good will.

Amendments:       The terms of this MOU may be modified or waived only by a separate writing signed by each of the parties that expressly modifies or waives any such term.

Applicable Law:       This MOU will be construed in accordance with and governed by the laws of the State of New Jersey (without regard to the choice of law provisions thereof).

Counterparts:       This MOU may be signed in any number of counterparts with the same effect as if each of the signatures were on the same agreement.

Entire Agreement:       This MOU constitutes the entire understanding between the parties and supersedes all previous agreements, promises, proposals, representations, understandings, and negotiations (whether written or oral) strictly with respect to the subject matter hereof.

*Cure Liability Clarification:*

Agreed by:       *Mission Holdings agrees to cure the Dallas County Reclaimation lien of $ 66,166 + the City of Irving liens totalling of B3086. All other cure cost w/ other than those contracts accepted shall be capped at $ 60,748*

Mission Holdings, Inc.                                    SES Americom, Inc.

_____        3/30/04        _____        _____
Philip J. Wise                    Date            Brent C. Bruun        Date

PRIVATE AND CONFIDENTIAL
*This document contains proprietary and confidential information of SES Americom, Inc. and shall not to be disclosed to any third party without the prior written consent of SES Americom, Inc.*